IN THE SUPREME COURT OF THE STATE OF DELAWARE

KENDRA ALICE FORD,[1] §
§ No. 152, 2023
Respondent Below, §
Appellant, § Court Below—Family Court
§ of the State of Delaware
v. §
§ File Nos. 22-07-1TK
DEPARTMENT OF SERVICES § 22-07-2TK
FOR CHILDREN, YOUTH AND §
THEIR FAMILIES, §
§ Petition Nos. 22-14842
Petitioner Below, § 22-23740
Appellee. § 22-14902
§

Submitted: September 20, 2023
Decided: December 5, 2023

Before **SEITZ**, Chief Justice; **LEGROW** and **GRIFFITHS**, Justices.

## ORDER

After consideration of counsel's non-merit brief filed under Supreme Court Rule 26.1(c), her motion to withdraw, the appellee's response, the Children's Attorney's response, and the record on appeal, it appears to the Court that:

(1) By order dated April 4, 2023, the Family Court terminated the parental rights of the appellant, Kendra Alice Ford ("Mother"), in her five children—K.F. (a boy, born in 2014), K.H. (a boy, born in 2015), K.M. (a girl, born in 2017), K.R. (a

---

[1] The Court previously assigned a pseudonym to the appellant under Supreme Court Rule 7(d).

girl, born in 2021) (together, the "Oldest Children"), and K.C. (a boy, born in 2022) (together with the Oldest Children, the "Children").[2] Mother appeals.

(2) On appeal, Mother's counsel has filed an opening brief and motion to withdraw under Rule 26.1(c). Counsel asserts that she has conducted a conscientious review of the record and the relevant law and has determined that Mother's appeal is wholly without merit. Counsel informed Mother of the provisions of Rule 26.1(c), provided her with a copy of counsel's motion to withdraw and the accompanying brief, and advised her that she could submit in writing any additional points that she wished for the Court to consider. Mother provided a statement for the Court's consideration, which counsel incorporated into her Rule 26.1(c) brief. The appellee, the Department of Services for Children, Youth and Their Families ("DSCYF"), and the Children's Attorney have responded to counsel's Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3) In 2019, DSCYF received a hotline call alleging that K.F., K.H., and K.M. were suffering from neglect and emotional abuse. DSCYF opened a treatment case because it had concerns about Mother's substance abuse, Mother's paramour's[3] mental health, and K.F.'s and K.H.'s unaddressed need for mental health services.

---

[2] The Family Court's order also terminated the parental rights of the Children's fathers, who are not parties to this appeal. We refer only to facts in the record that relate to Mother's appeal.

[3] Although Mother's paramour acted as a father figure to all five of Mother's children and is the biological father of Mother's youngest four children, he is not K.F.'s biological father.

In May 2021, a team-decision-making meeting was held and a safety plan was put in place. Under the safety plan, Mother was to provide DSCYF with clean urine screens, register K.F. and K.H. for school, seek mental health counseling for K.F. and K.H., and obtain employment.

(4) On September 2, 2021, DSCYF filed an emergency petition for custody of the Oldest Children after Mother failed to: register K.H. for school; enroll K.F. and K.H. in counseling; and provide DSCYF with clean urine screens. With the filing of DSCYF's dependency and neglect petition, the mandated hearings ensued.[4] At the preliminary protective and adjudicatory hearings, Mother stipulated that the Oldest Children were dependent in her care based on her substance abuse. The Family Court accepted Mother's stipulation and found that it was in the Oldest Children's best interests to remain in DSCYF custody and that DSCYF had made reasonable efforts to prevent the unreasonable unnecessary removal of the Oldest Children from their home.

(5) In November 2021, the Family Court held a dispositional hearing to review the case plan that DSCYF had developed to facilitate Mother's reunification with the Oldest Children. As of the dispositional hearing, Mother was participating in a daily substance abuse treatment program but continued to use and test positive

---

[4] When a child is removed from home by DSCYF and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules. *See* 13 *Del. C.* § 2514; Del. Fam. Ct. Civ. Pro. Rs. 212-219.

for illicit substances. The case plan therefore prioritized Mother's substance abuse and required her to continue substance abuse treatment, provide DSCYF with negative drug screens, sign a consent form to allow DSCYF to obtain information regarding her treatment, and follow any recommendations for treatment made by her counselor. Recognizing Mother's struggles with disciplining K.F. and K.H., the case plan also required Mother to complete parenting classes, engage with a family interventionist, and obtain a mental health provider for K.F. and K.H. and participate in sessions as recommended. Finally, the case plan required that Mother obtain employment and provide DSCYF with income verification.

(6) As of the February 7, 2022 review hearing, Mother was participating in a substance abuse treatment program but continued to submit urine screens positive for drugs. Mother was employed but had not yet provided pay stubs to DSCYF. Although Mother was enrolled in parenting classes and had regular appropriate phone and video contact with the Oldest Children, she had not returned repeated calls from her family interventionist. K.F. and K.H. were engaged in therapy and their behavior was improving. The Oldest Children were otherwise doing well in foster care. At the conclusion of the hearing, the Family Court found that it remained in the best interests of the Oldest Children to remain in DSCYF custody.

(7) On April 11, 2022, DSCYF filed an emergency petition for custody of K.C. because he tested positive for amphetamines at birth and Mother was not

4

complying with the hospital's instructions regarding his care. The Family Court granted the petition, and K.C. was placed in the same foster home as his siblings.

(8) Mother did not appear at the preliminary protective hearing held on April 20, 2022. On May 10, 2022, the Family Court held a combined adjudicatory and review hearing at which Mother stipulated that K.C. was dependent in her care because of her substance abuse. The parties agreed that the same case plan that DSCYF had developed to facilitate Mother's reunification with the Oldest Children would apply to its efforts to reunite Mother with K.C. Mother had tested positive for methamphetamine on February 23, March 11, and April 11, 2022. As of the May hearing, Mother was unemployed and had not completed parenting classes. Although Mother was speaking regularly with the Children, she had not had an in-person visit with them since February. Mother's treatment worker testified that she had a hard time communicating with Mother, who frequently changed her phone number without notice. The Children were doing well in foster care, and the oldest boys remained in therapy. Following the hearing, the Family Court found that it was in the Children's best interests that they remain in DSCYF custody and that DSCYF was making reasonable efforts to reunify the Children with Mother.

(9) In July 2022, DSCYF filed a motion to change the permanency goal for the Oldest Children from reunification to termination of parental rights for the purpose of adoption and a motion to change the permanency goal for K.C. from

reunification to the concurrent goals of reunification and termination of parental rights for the purpose of adoption. As of the July 25, 2022 review hearing, Mother was very engaged in substance abuse treatment, had provided proof of employment to DSCYF, was consistently visiting with the Children, and was living in a home that DSCYF found appropriate. But Mother had tested positive for illegal substances in June and had not completed parenting classes. The oldest three children were having trouble regulating their emotions but were otherwise doing well in foster care. The Family Court emphasized that Mother's case plan required her to complete a parenting program, engage with the Children's mental health treatment, and provide clean drug screens. Following the review hearing, the Family Court scheduled a permanency hearing for November 7, 2022.

(10) On October 31, 2022, DSCYF filed a motion to change the permanency goal for K.C. to termination of parental rights for the purpose of adoption. The Family Court continued the November 7, 2022 termination of parental rights ("TPR") hearing so that DSCYF's TPR petitions for the Children could be heard at the same time.

(11) At the March 8, 2023 TPR hearing, the Family Court heard testimony from Mother's original treatment worker, Mother's current treatment worker, the Children's permanency worker, Mother's family interventionist, the Children's adoption and independent living worker, the foster mom to the youngest three

6

children, the Children's court-appointed special advocate ("CASA"), and Mother. The evidence presented fairly established that Mother had satisfied the employment and parenting program components of her case plan. She had not, however, completed the substance abuse component of her case plan. Mother had struggled with substance abuse since the onset of DSCYF's involvement with the family in November 2019, but had refused suggested inpatient treatment. Despite attending Narcotics' Anonymous meetings, Mother produced positive screens through June 2022. Mother had refused to sign (multiple times) a consent to allow DSCYF access to her more current substance abuse treatment records. Although Mother had completed parenting classes—in October 2022, more than thirteen months after the Oldest Children came into DSCYF's care and one year after DSCYF made a referral—DSCYF continued to have concerns about Mother's ability to parent the Children because she had not been involved in her older sons' mental health treatment and she engaged primarily with the younger children during visits. Moreover, Mother had admitted to the Children's CASA that she is an addict but does not believe her substance abuse affects her ability to parent the Children.

(12) The evidence presented also showed that K.F. and K.H. continued to struggle with their mental health and had to be removed to a different foster home in September 2022 because they had been abusing their younger sister. Although Mother followed up with the foster mothers about the Children's various medical

7

appointments, she was not engaged with the medical providers. And Mother was not receptive to parenting suggestions made by DSCYF workers. The oldest three children had expressed a desire to live with Mother, but they also reported that they felt safe and cared for in their respective foster homes. The CASA opined that, despite the obvious love and affection the Children have for Mother, termination of Mother's rights in the Children would be in their best interests. Finally, the Family Court heard from Mother, who testified that she loves the Children and that she would do anything for them.

(13) On April 4, 2023, the Family Court issued a written order terminating the parental rights of Mother in the Children. The Family Court first found that DSCYF had proven by clear and convincing evidence that Mother failed to plan adequately for the Children's care under 13 *Del. C.* § 1103(a)(5) by failing to satisfy the substance-abuse component of her case plan.

(14) When the statutory basis for termination is failure to plan, there must be proof of at least one additional statutory factor.[5] Here, the Family Court found proof that K.F., K.H., K.M., and K.R. had been in DSCYF care for a period in excess of one year and K.C., who came into care as an infant, had been in DSCYF care for at least six months.[6] Turning to the best-interests factors as defined by 13 *Del. C.* §

---

[5] *Id.* § 1103(a)(5)(a)(1)-(5) (listing additional conditions).
[6] *Id.* § 1103(a)(5)(a)(1).

722, the Family Court found that five factors favored termination (the Children's interactions with their parents and other significant people in their lives; the Children's adjustment to their home, school, and community; the parties' mental and physical health; Mother's past and present compliance with her parental responsibilities to the Children; and Mother's criminal history), found that one factor weighed against termination (Mother's wishes), found one factor to be neutral (the Children's wishes), and gave no weight to the remaining factor (Mother's history of domestic violence). The court then found by clear and convincing evidence that termination of Mother's parental rights was in the Children's best interests. This appeal followed.

(15) On appeal, this Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[7] We review legal rulings *de novo*.[8] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly erroneous.[9] If the trial judge has correctly applied the law, then our standard of review is abuse of discretion.[10] On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[11]

---

[7] *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 439-40 (Del. 2010).
[8] *Id.* at 440.
[9] *Id.*
[10] *Id.*
[11] Wife (J.F.V.) v. Husband (O.W.V., Jr.), 402 A.2d 1202, 1204 (Del. 1979).

(16) The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[12] First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[13] When the statutory basis for termination is failure to plan, the Family Court must also find proof of at least one additional statutory condition[14] and proof that DSCYF made *bona fide* reasonable efforts to preserve the family unit.[15] If the Family Court finds a statutory basis for termination of parental rights, the court must determine whether, under 13 *Del. C.* § 722, severing parental rights is in the best interests of the child.[16] Both of these requirements must be established by clear and convincing evidence.[17]

(17) On appeal, Mother has submitted a statement for the Court's consideration. Mother disagrees with the Family Court's finding that termination of her parental rights is in the Children's best interests and avers, among other things, that she has "consistently provided clean screens."[18] The record belies Mother's claim of sobriety during the dependency and neglect proceedings in this case. As noted above, a key component of Mother's case plan was that she execute a written

---

[12] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).
[13] *Id.* at 537.
[14] 13 *Del. C.* § 1103(a)(5)(a)(1)-(5) (listing additional conditions).
[15] *In re Hanks*, 553 A.2d 1171, 1179 (Del. 1989).
[16] *Shepherd*, 752 A.2d at 536-37.
[17] Powell v. Dep't of Servs. for Children, Youth and Their Families, 963 A.2d 724, 731 (Del. 2008).
[18] Opening Br. at 12.

consent to allow DSCYF access to her medical records. In the months leading up to the TPR hearing, Mother refused to do so. We note that Mother was given additional time to complete her case plan successfully when the TPR hearing, initially scheduled for November 2022, was rescheduled to March 2023. Although it is clear from the record that Mother has a strong bond and a close relationship with the Children, the record also supports the Family Court's conclusion that her ongoing substance abuse has negatively affected her ability to parent them safely and that termination of her parental rights was in the Children's best interests.

(18) Having carefully reviewed the parties' positions and the record on appeal, we find that the Family Court's factual findings are supported by the record, and we discern no error in the court's application of the law to the facts. We therefore conclude that Mother's appeal is wholly without merit and devoid of any arguably appealable issue. And we are satisfied that Mother's counsel made a conscientious effort to examine the record and the law and properly determined that Mother could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED. Counsel's motion to withdraw is moot.

BY THE COURT:

*/s/ N. Christopher Griffiths*
Justice

11